**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
Petitioner,

No. 96-1901

v.

JOSEPH E. DAVIS,
Respondent.

On Petition for Review of an Order
of the Benefits Review Board.
(BRB-93-1426)

Argued: April 9, 1997

Decided: June 12, 1997

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Vacated and remanded with instructions by unpublished per curiam
opinion. Judge Michael wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Lawrence Philip Postol, SEYFARTH, SHAW, FAIR-
WEATHER & GERALDSON, Washington, D.C., for Petitioner.
Robert Elliott Walsh, RUTTER & MONTAGNA, L.L.P., Norfolk,
Virginia, for Respondent. **ON BRIEF:** Matthew H. Kraft, RUTTER
& MONTAGNA, L.L.P., Norfolk, Virginia, for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal was taken from the decision by the Benefits Review Board awarding workers compensation benefits to Joseph E. Davis under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. The Administrative Law Judge awarded Davis permanent total disability benefits because of his back pain, and the Benefits Review Board affirmed.

Davis was employed by Newport News Shipbuilding and Dry Dock Company as a senior optical detailer, a type of draftsman. His job involved placing mylar, a thin plastic film, on top of a table and marking it with pencil. The job required small scale detail work and often involved Davis' leaning across the work table. The job was essentially a sedentary one.

In August 1990, Davis tripped on a section of carpet at his place of employment and twisted his back. He had previously undergone disk surgery for a non-work related back injury. Following evaluation in October 1990, Dr. Richard McAdam, a board certified neurosurgeon, did a thorough examination including a lumbar myelogram and, based on those findings, performed a lumbar laminectomy, removing a herniated disk. Six months later, after Dr. McAdam performed a CT scan of the lumbar spine and ordered an EMG nerve conduction study, he found "no recurrence of disk disease" and a "normal" EMG, and so returned Davis to light duty work with permanent restrictions on lifting over 40 pounds, repeated forward bending, and climbing. He also prescribed frequent changes of position.

As Davis continued to complain of pain postoperatively, he requested a second opinion and was examined by Dr. Douglas Griffith, another board certified neurosurgeon, who agreed with Dr. McAdam's evaluation and recommendations. Also, Dr. McAdam did a

2

complete myelogram in May 1991, which proved "within normal limits for a postoperative patient." Again Dr. McAdam expressed his opinion that Davis "should be able to work with restrictions," as previously given. He concluded, "I do feel that you can work a regular 40-hour week within these guidelines and, as I understand your job requirements, you should be able to work your regular job function." In a letter to Davis' primary-care physician, Dr. McAdam noted that Davis "has been a management problem and I feel that I must make a stand that he indeed can work."

Wishing to receive another opinion, Davis on his own initiative scheduled an examination with Dr. Kathryn Holloway, another board certified neurosurgeon, who concluded that Davis had "an excellent decompression of his nerve roots and does not require further surgery." Dr. Holloway referred Davis to Dr. William Walker, who gave the opinion that Davis "is capable of performing sedentary work in which he can frequently change his position." While Dr. Walker diagnosed Davis as suffering from Chronic Pain Syndrome, Pain Amplification Syndrome, and Failed Back Surgery Syndrome, he concluded, "I am unable to determine any concrete pathoanatomical correlates" to the pain.

In November 1991, after having returned to work for approximately six months, Davis reported to the shipyard clinic that he had hurt his back again when he tripped over some boxes in the work area. Dr. Hall, the shipyard clinic physician and also a board certified neurologist, prescribed heat and returned Davis to work. In December 1991, Davis was again examined by Dr. McAdam, Davis' original treating neurologist, who recommended that Davis continue working as "[h]e does not have a disability that would impair his ability to work."

Finally, Davis was examined by Dr. John Jane in August 1992, who reviewed the complete CT myelogram and found "a mild to moderate disc at C4-5 in a central location . . .[and] a defuse arthritic spine." He concluded, however, that these findings "do not correlate with [Davis'] clinical symptoms" and that Davis' "lumbar region studies were totally within normal limits."

In short, while Davis continued to work and to complain of pain in his back, five doctors, several of whom he visited for second opin-

3

ions, concluded that they could find no objective medical evidence correlated to Davis' complaints.

On Davis' workers compensation claim for total permanent disability, the ALJ conducted a hearing, following which he awarded Davis benefits. The ALJ found Davis' claim of pain to be credible and concluded that there was objective medical evidence to support the claim. Apart from Davis' medical history, the ALJ concluded:

> [Davis' May 1991 myelogram] showed post-operative changes [at] L4 and a vacuum effect at L4-L5 and mild central disc bulge at L5 (CX-1). He sought out a lumbar myelogram in May of 1991 which is certainly inconsistent with a man who is not in lower back pain. The CT scan of the lumbar spine on May 15, 1991, indicated L4-L5 degenerative disease without evidence of frank herniation. There was some anterior spur formation on the lower two lumbar vertebral bodies. CX 8 and 9 show Claimant underwent a myelogram on August 4, 1992. Results showed chronic changes throughout the lumbar spine and a disc bulge at L3-L4, right-sided spondylosis at L4-L5 and a small disc herniation at L5-S1. Based upon all of this, I find that the objective medical evidence does sufficiently substantiate Claimant's complaint of pain.

On appeal to the Benefits Review Board, the board noted that the ALJ justified Davis' pain claim based on Davis' testimony and on the ALJ's conclusion that the claim was "sufficiently substantiated by various myelogram and CT scan tests results documenting spinal defects and irregularities."

We review the Board's decision for errors of law and to determine whether the "substantial evidence" supports the ALJ's factual findings. See, e.g., Pittman Mechanical Contractors, Inc. v. Director, OWCP, 35 F.3d 122, 127 (4th Cir. 1994); Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 8 F.3d 175, 179 (4th Cir. 1993), aff'd, 514 U.S. 122 (1995).

While five doctors presented evidence on Davis' condition, none, as far as we can determine from the record, supported the conclusions

4

reached by the ALJ in his findings of fact about possible physical sources of Davis' back pain. That is not to say that the ALJ's review of the myelograms or CT scans is in error. We simply note that the ALJ has not, to our knowledge, been qualified as a medical expert in this case and as far as we can tell, his medical findings are unsupported by medical testimony.

Because of Davis' documented medical history and the failure of the doctors to focus on the aspects relied on by the ALJ to conclude that objective medical evidence supports Davis' claim of pain, we think that rather than reverse, it is the better course to vacate the decision of the Benefits Review Board and remand this case with instructions to the ALJ either to open the record for further medical evidence on the objective medical condition of Davis' back that supports or discredits his pain claim or to dismiss Davis' claim as unsupported by medical evidence.

IT IS SO ORDERED

MICHAEL, Circuit Judge, dissenting:

I respectfully dissent. The Benefits Review Board has consistently held that credible complaints of severe pain can form the basis for a finding of disability under the Longshore and Harbor Workers' Compensation Act. See Miranda v. Excavation Constr., Inc., 13 B.R.B.S. 882, 884 (1981) ("With regard to employer's contention that there is no objective evidence of a physical impairment, a finding of disability may be based on claimant's credible complaints of pain alone."); Richardson v. Safeway Stores, Inc., 14 B.R.B.S. 855, 858 (1982) ("[T]he administrative law judge was correct in concluding that pain can be a disabling factor."); Harrison v. Todd Pacific Shipyards Corp., 21 B.R.B.S. 339, 343 (1988) ("When evaluating the evidence, the administrative law judge may accept or reject the witnesses' testimony and may find that a claimant's credible complaints of pain alone are sufficient to satisfy his burden of proof."); Anderson v. Todd Shipyards Corp., 22 B.R.B.S. 20, 21 (1989) ("A claimant's credible complaints of pain alone may be enough to meet her burden of establishing disability."). Davis's complaints of severe pain in his lower back followed the removal of a herniated disc from his spine, his second serious back operation in two years. The ALJ found his com-

5

plaints to be credible. It was well within the ALJ's scope of discretion to find that Davis was disabled and to award him benefits. Because there is no need for further evidence or clarification in this case, I disagree with the majority's order of remand and therefore dissent.

6